| | | |
|---|---|---|
| MEKEDES "MIMI" DEMISSEW<br>9305 Burr St.<br>Oakland, CA 94605 | \* | IN THE |
| | \* | CIRCUIT COURT |
| Plaintiff, | \* | FOR |
| v. | \* | BALTIMORE CITY |
| THE PRIDE CENTER OF MARYLAND, INC.<br>2530 N. Charles St. 3rd Floor<br>Baltimore, MD 21218 | \* | CASE NO. 24-C-23-2686 |
| | \* | |
| AND | \* | |
| MERRICK MOSES MOISE<br>2530 N. Charles St. 3rd Floor<br>Baltimore, Maryland 21218 | \* | |
| | \* | |
| Defendants. | \* | **JURY TRIAL DEMANDED** |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Plaintiff Mekedes "Mimi" Demissew ("Demissew" or "Plaintiff"), by and through her undersigned attorney David Baña, and hereby files this Complaint against Defendants The Pride Center of Maryland, Inc. ("PCOM") and Merick Moses Moise ("Moses") (collectively, "Defendants"), and in support thereof states and alleges as follows:

### NATURE OF THE ACTION

1. This action involves a common law claim for wrongful discharge in violation of public policy arising from a Baltimore-based nonprofit organization and the president of its board of directors deliberately terminating the Plaintiff's employment over her refusal to allow the board president's friends to grift on government grants. This action further seeks relief for violations of the Maryland Wage Payment and Collection Law for unpaid wages due and owing. Through this action, Plaintiff seeks monetary damages for lost wages and benefits, compensatory damages for

mental anguish, humiliation, disgrace and loss of dignity, punitive damages, the costs and expenses of this suit, attorney's fees, and such other and further relief as the Court may deem proper.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103.

3. The Circuit Court for Baltimore City is the proper venue for this action pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201 and § 6-202 because Defendants regularly carry on business and committed the wrongful actions alleged herein in Baltimore City.

## PARTIES

4. Plaintiff Mekedes "Mimi" Demissew is a current resident of Oakland, CA. Demissew served as the Executive Director of The Pride Center of Maryland, Inc., from July of 2018 to on or about June 16, 2020.

5. Defendant the Pride Center of Maryland is a corporation organized and operating under the laws of the State of Maryland with its principal place of business located at 2530 N. Charles St. 3rd Floor, Baltimore, MD 21218. PCOM is a nonprofit organization that receives government grants and other donations and provides services catered to the Baltimore area LBGTQ community. At all relevant times, PCOM had less than 15 employees.

6. Defendant Merrick Moses Moise was at all relevant times the president of PCOM's board of directors. Moses was a direct and substantial participant in the wrongful conduct alleged and at all relevant times was acting both individually and as an actual and/or apparent agent, servant, representative, or employee of PCOM.

## FACTUAL BACKGROUND

7. A few months before her termination as Executive Director, Ms. Demissew terminated an existing contract with Moses' friend Mr. Cleo Manago ("Manago").

8. The Manago contract was funded with government dollars.

9. Demissew terminated the Manago contract for his utter failure to perform any meaningful work under the contract.

10. Moreover, Manago expected to grift on a new, separate government grant that Demissew sought on behalf of PCOM.

11. However, Demissew — in an effort to protect PCOM, and herself, from claims of misuse, misappropriation, and fraud — did not include Manago as a partner in the grant proposal.

12. Manago's exclusion upset both Manago and Moses.

13. Moses then began hyper scrutinizing Demissew's work and began making extraordinary demands of her.

14. Approximately one month before her termination, Demissew approved the termination of a close friend of Moses' named Keith Holt ("Holt").

15. Demissew did so at the recommendation of the PCOM's Program Director.

16. The Program Director presented Demissew with a well-founded business case for terminating Holt.

17. Holt proved to be a complete indolent and failed to put forth any meaningful effort into the completion of basic tasks.

18. Holt — like Manago — sought to grift off PCOM.

19. Upon learning of the termination of his friend, Moses was irate and sought to overturn the termination.

20. He further ordered, under a thinly veiled threat of dismissal, that Demissew pay Holt a severance.

21. There was no legal justification or legitimate business case for paying Holt a severance. Moses simply wanted the PCOM to continue to pay his friend for not working.

22. As the Executive Director of a non-profit organization that received donations from individuals as well as grants from state, local, and federal governments, Ms. Demissew had an obligation to properly manage those funds and ensure that there was no misuse, misappropriation, or fraud.

23. Ms. Demissew therefore had a legal obligation to terminate the Manago contract for his utter failure to perform and to not include him in the subsequent grant proposal.

24. With respect to Holt, his salary was paid out of donations and state grants and Demissew therefore had an obligation to ensure that employees — like Holt — were actually performing meaningful work on behalf of PCOM.

25. Moses, however, sought to allow Holt to continue to milk PCOM for a paycheck.

26. Under the circumstances, Demissew fulfilled her legal obligations to government grantors and private donors when she terminated his employment.

27. By all objective measures, Ms. Demissew was meeting all legitimate expectations of her position as Executive Director of PCOM.

28. On June 15, 2020, Moses, without the support of the board of directors, said that he was "restructuring" PCOM and informed Demissew that her new position under his wholly

made up restructuring plan was an administrative/clerical hourly position which cut her salary by approximately 50%.

29. The new position was a decimating demotion.

30. The new position and salary reduction was to start in 45 days.

31. Moses' stated reason for Demissew's demotion was her purported poor performance.

32. Moses' claims of poor performance were nothing more than platitudes, conclusory statements, and unfair criticisms of Demissew.

33. The demotion was a constructive discharge.

34. On June 16, 2020, Demissew resigned.

35. In an email, a PCOM board member expressed his discontent with Moses' decision and memorialized his recognition that Moses' constructive discharge of Demissew was pay back for her rightfully cancelling Manago's contract and terminating Holt's employment.

36. That email is attached to this Complaint as Exhibit A.

37. PCOM did not pay Demissew her accrued but unused paid time off (PTO).

38. Soon after, Manago became the new Executive Director of PCOM.

### COUNT I—WRONGFUL DISCHARGE AGAINST ALL DEFENDANTS

39. Demissew realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 38 of this Complaint with the same effect as though fully set forth herein.

40. The avowed public policy in Maryland in all of its law and statutes prohibiting misuse, misappropriation, and fraud in the use of public grants and private donations is to ensure that public funds and private donations used to support charitable organizations and other non-

profits are spent in a manner consistent with the purpose of the grant and/or donation. These protections are quite important, and many of Maryland's laws dealing with the subject reflect the State's strong public policies in that regard.

41. Plaintiff lawfully sought to protect herself — as she was the signatory to grant applications — and PCOM from claims of misuse, misappropriation, and fraud by terminating Manago's contract, as he failed to meaningfully perform under the contract and his contract was funded, in part, with State funds.

42. Plaintiff lawfully sought to protect herself — as she was the signatory to grant applications — and PCOM from claims of misuse, misappropriation, and fraud by terminating Holt's employment, as he failed to meaningfully perform in his role at PCOM and his wages were funded, in part, with State funds.

43. Plaintiff's termination was wrongful and without any cause whatsoever in that it resulted solely from Plaintiff's legal obligations to ensure PCOM was not misusing, misappropriating, or fraudulently spending State grant funds.

44. Plaintiff's termination contravened the clear mandate of public policy as set forth State laws and statutes prohibiting misuse, misappropriation, and fraud in the use of public grants and private donations.

45. Prior to her discharge, Demissew's performance was meeting all of PCOM's legitimate expectations.

46. Defendant Moses, as an agent for Defendant PCOM, fired Plaintiff. Defendant PCOM is liable and responsible for all the acts committed by Moses while he was acting as board president.

47. Defendant Moses is liable for damages stemming from his own conduct.

48. All Defendants are jointly and severally liable for damages suffered by Plaintiff.

49. Defendants' conduct in terminating Plaintiff was deliberate, actually malicious, willful, and intentionally calculated to inflict harm upon Plaintiff. The conduct was done in an effort to engage in unlawful conduct. When it became clear that Plaintiff was not willing to allow Moses' friends to grift off of PCOM and its grantors and donors, Defendants terminated her employment without any cause whatsoever.

50. As a direct and proximate cause of Defendants' wrongful termination of Plaintiff, she was left without employment and deprived of wages and benefits which she needed to meet her obligations and living expenses. Plaintiff also suffered injuries including but not limited to, embarrassment and humiliation, loss of sleep, harm to her professional standing, character and reputation, lost professional opportunities, emotional distress, mental anguish, loss of enjoyment of life, inconvenience, attorney's fees, and the cost and expenses of this lawsuit.

WHEREFORE, Plaintiff demands a judgment in favor of Plaintiff and against Defendants, finding Defendants liable for committing a wrongful discharge, enjoining Defendants from committing future tortious acts against Plaintiff, and awarding Plaintiff damages for lost wages and benefits and other past pecuniary losses, moving expenses, compensatory and/or punitive damages, front pay, future pecuniary losses, attorney's fees, expert witness fees and court costs in an amount that exceeds $75,000.00, plus such other and further relief as the court deems just and proper.

### COUNT II—VIOLATIONS OF THE MARYLAND WAGE PAYMENT AND COLLECTION LAWS AGAINST PCOM

51. Demissew realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 50 of this Complaint with the same effect as though fully set forth herein.

52. PCOM's employee handbook allows for up to 50% of accrued but unused paid time off to be paid to employees who are terminated or laid off at the discretion of the Executive Director.

53. Demissew was the Executive Director at the time of her constructive discharge.

54. At Demissew's discretion, she was to be paid 50% of her paid time off.

55. Defendant PCOM did not pay Demissew the required paid time off.

56. At least two weeks have passed since the paid time off was due and owing to Demissew.

57. Upon information and belief Demissew's pay stubs show that paid time off is actually earned and not a gratis benefit, effectively overriding the language in the handbook.

58. Demissew sought a copy of her last pay stub from Defendant PCOM. Defendant PCOM failed to provide Demissew with her last pay stub.

59. There is no bona fide dispute as to whether or not Defendant PCOM owes Demissew her wages.

WHEREFORE, Plaintiff demands a judgment in favor of Plaintiff and against Defendant PCOM, finding Defendant liable for committing violations of the Maryland Wage Payment and Collection Law, enjoining PCOM from committing future tortious acts against Plaintiff, and awarding Plaintiff damages for her unpaid wages and benefits, attorney's fees, expert witness fees and court costs plus such other and further relief as the court deems just and proper.

Respectfully submitted,

*[signature]*

David Baña
Law Office of David Baña, Esq.
4305 Saint Paul Street
Baltimore, MD 21218
david@davidbana.com
Tel: 443.742.2390
Fax: 410.670.7573
CPF No.: 1912170022
*Counsel for Plaintiff*